UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDDIE HAWKINS,

        Petitioner,                           Hon. Janet T. Neff

v.                                                   Case No. 1:14-CV-1191

JOAN ROGGENBUCK,

        Respondent.

_____/

**AMENDED REPORT AND RECOMMENDATION**

This matter is before the Court on Hawkins' petition for writ of habeas corpus. In accordance with 28 U.S.C. § 636(b) authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of prisoner petitions, the undersigned recommends that Hawkins' petition be **denied**.

**BACKGROUND**

As a result of events allegedly occurring on or about September 23, 2011, Petitioner was charged with: (1) solicitation to possess a chemical he knew or had reason to know would be used to manufacture a controlled substance; (2) attempted possession of a chemical he knew or had reason to know would be used to manufacture a controlled substance; and (3) conspiracy to possess a chemical he knew or had reason to know would be used to manufacture a controlled substance. (Trial Transcript, May 24, 2012 at PageID.300-01). Several individuals testified at Petitioner's jury

trial.  The relevant portions of their testimony are summarized below.

**Christine Van Dam**

As of September 23, 2011, Van Dam was employed as an Allegan County Deputy Sheriff.  (Trial Transcript, May 24, 2012 at PageID.340).  On this date, Deputy Van Dam was dispatched to a location where Sergeants Brett Ensfield and Scott Tatrow had arrested three individuals following a traffic stop.  (Trial Transcript, May 24, 2012 at PageID.340-42). Specifically, Petitioner, Monica Spencer, and Janet Walker were arrested for possession of pseudoephedrine, a component used in the manufacture of methamphetamine.  (Trial Transcript, May 24, 2012 at PageID.340-43).  Deputy Van Dam arrived at the location and transported Monica Spencer to the Allegan County Jail.  (Trial Transcript, May 24, 2012 at PageID.341-42).

Deputy Van Dam later met with Janet Walker who, after being advised of her Miranda rights, agreed to speak with Van Dam.  (Trial Transcript, May 24, 2012 at PageID.342-43). During this interview, Walker acknowledged that she knew that "the pills were ultimately going to be given to some unknown person" and that "they were the middle people and that [the pills] were going to be used to make methamphetamine."  (Trial Transcript, May 24, 2012 at PageID.380).

**Janet Walker**

On September 23, 2011, Walker drove to the residence where Petitioner and Monica Spencer lived so that the group could have a marijuana "smoke session."  (Trial Transcript, May 24, 2012 at PageID.347-50).  After smoking marijuana for some time, Petitioner and Spencer offered Walker "gas money" if she would agree to drive the group to a store to purchase pseudoephedrine

2

pills.  (Trial Transcript, May 24, 2012 at PageID.350-55, 371-72).  Walker understood that pseudoephedrine was used in the manufacture of methamphetamine and sold "in the streets" for as much as forty dollars per box.  (Trial Transcript, May 24, 2012 at PageID.353-54).  Petitioner and Spencer wanted to purchase pseudoephedrine to resell on the street.  (Trial Transcript, May 24, 2012 at PageID.349-53).

        The group traveled to Wal-Mart first.  (Trial Transcript, May 24, 2012 at PageID.354-55).  Walker and Spencer soon exited the store, however, because the "line was too long."  (Trial Transcript, May 24, 2012 at PageID.355-56).  Walker and Spencer drove to Walgreens where each purchased one box of pseudoephedrine.  (Trial Transcript, May 24, 2012 at PageID.356-57).  Petitioner remained at Wal-Mart, but was unable to purchase pseudoephedrine because he provided the pharmacy clerk with the "wrong I.D."  (Trial Transcript, May 24, 2012 at PageID.356-57).  After Petitioner exited Wal-Mart and returned to the vehicle, Walker and Spencer returned to Wal-Mart where each purchased one box of pseudoephedrine.  (Trial Transcript, May 24, 2012 at PageID.357).  As the group was driving back home, they were stopped by the police and arrested. (Trial Transcript, May 24, 2012 at PageID.358).

**Monica Spencer**

        On September 23, 2011, Janet Walker joined Spencer and Petitioner to smoke marijuana.  (Trial Transcript, May 24, 2012 at PageID.382-86).  The group later drove to a store to purchase pseudoephedrine.  (Trial Transcript, May 24, 2012 at PageID.386-87).  Spencer was going to purchase pills at the behest of a man named Ricky who wanted the pills to facilitate the manufacture of methamphetamine.  (Trial Transcript, May 24, 2012 at PageID.387-89).  Spencer

did not intend to re-sell the pills, however. (Trial Transcript, May 24, 2012 at PageID.387-88). Instead, Spencer intended to simply give the pills to Ricky because he was like a brother to her. (Trial Transcript, May 24, 2012 at PageID.387-88). Walker, on the other hand, planned to sell her share of the pills in an effort to make money. (Trial Transcript, May 24, 2012 at PageID.388). Petitioner was not part of this plan and was not going to purchase any pseudoephedrine. (Trial Transcript, May 24, 2012 at PageID.389). Petitioner was nevertheless aware that it was illegal to purchase pseudoephedrine and re-sell it to others. (Trial Transcript, May 24, 2012 at PageID.396).

**Brett Ensfield**

As of September 23, 2011, Ensfield was employed as a Sergeant with the Allegan Country Sheriff's Department. (Trial Transcript, May 24, 2012 at PageID.411-21). On this date, Ensfield was dispatched to investigate a group of individuals "suspiciously" attempting to purchase pseudoephedrine. (Trial Transcript, May 24, 2012 at PageID.420-22). Sergeant Ensfield soon thereafter spotted Janet Walker's vehicle and initiated a traffic stop. (Trial Transcript, May 24, 2012 at PageID.422-24). Ensfield made contact with Walker who was unable to produce a driver's license or other identification. (Trial Transcript, May 24, 2012 at PageID.424-25). Ensfield instructed Walker to exit the vehicle. (Trial Transcript, May 24, 2012 at PageID.425-26). By this time at least one other law enforcement officer had arrived on the scene and was dealing with Petitioner and Monica Spencer. (Trial Transcript, May 24, 2012 at PageID.426-27).

After obtaining Walker's consent, Ensfield searched her vehicle and discovered four boxes of pseudoephedrine. (Trial Transcript, May 24, 2012 at PageID.427-28). Sergeant Ensfield spoke with Monica Spencer who admitted that "she had purchased pseudoephedrine and that it was

going to be used for methamphetamine." (Trial Transcript, May 24, 2012 at PageID.430). Spencer further indicated that she was going to sell the pills "to a white guy from Kalamazoo." (Trial Transcript, May 24, 2012 at PageID.430-31). Walker, Spencer, and Petitioner were then arrested. (Trial Transcript, May 24, 2012 at PageID.428-31).

**Ashley Parker**

As of September 2011, Parker was employed as a pharmacy technician at the Wal-Mart in Plainwell. (Trial Transcript, May 24, 2012 at PageID.452). The purchase of pseudoephedrine is regulated because it is used in the manufacture of methamphetamine. (Trial Transcript, May 24, 2012 at PageID.453). To purchase pseudoephedrine, a customer has to produce identification. (Trial Transcript, May 24, 2012 at PageID.453-55). Using a computer database, the pharmacy technician then examines the customer's history of purchasing pseudoephedrine. (Trial Transcript, May 24, 2012 at PageID.454-56). If a customer purchases pseudoephedrine under suspicious circumstances, the pharmacy technician will contact the police to "let them know." (Trial Transcript, May 24, 2012 at PageID.456-59). If a customer wanted medicine for "bug bites," pseudoephedrine would not be appropriate. (Trial Transcript, May 24, 2012 at PageID.459). Rather, an unregulated, over-the-counter medication like Benadryl would be appropriate. (Trial Transcript, May 24, 2012 at PageID.459).

**Chris Kuhn**

As of September 23. 2011, Sergeant Kuhn was employed as the evidence custodian for the Allegan County Sheriff's Department. (Trial Transcript, May 24, 2012 at PageID.462-63).

On that date, Kuhn received an evidence storage bag containing four boxes of pseudoephedrine, two purchased from Walgreens and two purchased from Wal-Mart. (Trial Transcript, May 24, 2012 at PageID.464-69).

**Eddie Hawkins**

Hawkins rode along with Monica Spencer and Janet Walker to Wal-Mart so that he could purchase "bed bug medication" for his son. (Trial Transcript, May 24, 2012 at PageID.476-78). Hawkins had no knowledge what Spencer and Walker were buying. (Trial Transcript, May 24, 2012 at PageID.478-79). Hawkins had no involvement with methamphetamine, but was nevertheless aware that pseudoephedrine is used in its manufacture. (Trial Transcript, May 24, 2012 at PageID.480, 488-89). Hawkins was also aware that people "get paid cash money" for pseudoephedrine pills. (Trial Transcript, May 24, 2012 at PageID.488-89).

Following the presentation of evidence, the jury found Petitioner guilty of (1) attempted possession of a chemical he knew or had reason to know would be used to manufacture a controlled substance and (2) conspiracy to possess a chemical he knew or had reason to know would be used to manufacture a controlled substance. (Trial Transcript, May 24, 2012 at PageID.557). Petitioner was sentenced, as an habitual offender, to concurrent sentences of 18 to 60 months and 4 to 20 years. (Sentencing Transcript, July 9, 2012 at PageID.575-76). Petitioner subsequently appealed his conviction in the Michigan Court of Appeals asserting the following claim:

> I. Defendant's convictions must be reversed because there is insufficient evidence that he either conspired to possess or attempted to possess a controlled substance (pseudoephedrine).

The Michigan Court of Appeals affirmed Petitioner's conviction. *People v. Hawkins*, Case No. 311476, Opinion (Mich. Ct. App., Mar. 12, 2013). Petitioner subsequently moved in the Michigan Supreme Court for leave to appeal asserting the same claim. The court denied leave to appeal on the ground that "we are not persuaded that the question presented should be reviewed by this Court." *People v. Hawkins*, Case No. 147081, Order (Mich., Sept. 3, 2013). On November 20, 2014, Petitioner initiated the present action asserting the claim identified above.

## STANDARD OF REVIEW

Hawkins' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254. The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

Prior to *Williams*, the Sixth Circuit interpreted the "unreasonable application" clause of § 2254(d)(1) as precluding habeas relief unless the state court's decision was "so clearly incorrect that it would not be debatable among reasonable jurists." *Gordon v. Kelly*, 2000 WL 145144 at *4 (6th Cir., February 1, 2000); *see also*, *Blanton v. Elo*, 186 F.3d 712, 714-15 (6th Cir. 1999). The *Williams* Court rejected this standard, indicating that it improperly transformed the "unreasonable application" examination into a subjective inquiry turning on whether "at least one of the Nation's jurists has applied the relevant federal law in the same manner" as did the state court. *Williams*, 529 U.S. at 409.

In articulating the proper standard, the Court held that a writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12. Accordingly, a state court unreasonably applies clearly established federal law if it "identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts of the prisoner's case" or if it "either unreasonably extends or unreasonably refuses to extend a legal principle from the Supreme Court precedent to a new context." *Ayers*, 623 F.3d at 307.

8

Furthermore, review under § 2254(d)(1) "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." While this standard is "demanding" it is "not insatiable." *Id.*

For a writ to issue pursuant to § 2254(d)(1), the Court must find a violation of clearly established federal law "as set forth by the Supreme Court at the time the state court rendered its decision." *Stewart v. Irwin*, 503 F.3d 488, 493 (6th Cir. 2007). This definition of "clearly established federal law" includes "only the holdings of the Supreme Court, rather than its dicta." *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). Nevertheless, "the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart*, 503 F.3d at 493.

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy the requirements of either § 2254(d)(1) or § 2254(d)(2). This provision, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 131 S.Ct. 770, 785 (2011). Instead, when a federal claim has been presented to a state court and the state court has denied relief, "it may be presumed that the state

court adjudicated the claim on the merits." *Id.* at 784-85. Where such is the case, the Court must apply the deferential standard of review articulated above, rather than some other less deferential standard.

The presumption that the state court "adjudicated [a] claim on the merits" may be overcome only "when there is reason to think some other explanation for the state court's decision is more likely." *Id.* If this presumption is overcome, however, the Court reviews the matter de novo. *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question); *see also, Maples v. Stegall*, 340 F.3d 433, 437 (6th Cir. 2003) (recognizing that *Wiggins* established *de novo* standard of review for any claim that was not addressed by the state courts).

## ANALYSIS

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury. *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006). Furthermore, where the record supports conflicting inferences the Court "must presume - even if it

does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).

Petitioner was convicted of (1) attempted possession of a chemical he knew or had reason to know would be used to manufacture a controlled substance and (2) conspiracy to possess a chemical he knew or had reason to know would be used to manufacture a controlled substance. As of September 23, 2011, it was unlawful under Michigan law to "own or possess any chemical or laboratory equipment that he or she knows or has reason to know is to be used for the purpose of manufacturing a controlled substance in violation of section 7401 or a counterfeit substance or a controlled substance analogue in violation of section 7402." Mich. Comp. Laws § 333.7401c(1)(b).

To establish that Petitioner was guilty of attempt to commit a criminal offense, the prosecution was required to prove that Petitioner "inten[ded] to commit an offense prohibited by law, coupled with conduct toward the commission of that offense." *People v. Thousand*, 631 N.W.2d 694, 702 (Mich. 2001). When presented with a charge of attempt, the trier of fact"must examine the unique circumstances of the particular case and determine whether the prosecution has proven that the defendant possessed the requisite specific intent and that he engaged in some acts 'towards the commission' of the intended offense." *Id.*

Michigan law defined a criminal conspiracy as "a partnership in criminal purposes." *People v. Blume*, 505 N.W.2d 843, 846 (Mich. 1993). Proving the existence of a criminal conspiracy "requires evidence of specific intent to combine with others to accomplish an illegal objective." *People v. Izarraras-Placante*, 633 N.W.2d 18, 21 (Mich. Ct. App. 2001). As is well recognized, however, proving such matters "is often difficult because of the clandestine nature of

11

criminal conspiracies." *People v. Justice*, 562 N.W.2d 652, 658-59 (Mich. 1997). Accordingly, "direct proof of the conspiracy is not essential; instead, proof may be derived from the circumstances, acts, and conduct of the parties." *Id.* at 659. As has been observed, "[w]hat the conspirators actually did in furtherance of the conspiracy is evidence of what they had agreed to do." *People v. Lowery*, 736 N.W.2d 586, 593 (Mich. Ct. App. 2007).

Sufficient evidence was presented at trial from which a reasonable juror could infer that Petitioner attempted to possess pseudoephedrine. As the Michigan Court of Appeals concluded:

> In the instant case, there was sufficient evidence that defendant attempted to own or possess a chemical he knew or had reason to know would be used to manufacture methamphetamine. According to Walker, the trio went to Plainwell purposely to buy pseudoephedrine pills. She explained that the initial plan was for her to drive and for defendant and Spencer to actually purchase the pills. Spencer testified that she and Walker discussed the plan in front of defendant while driving to Plainwell. Once arriving at the Walmart, Walker and Spencer left defendant waiting in line to buy the pseudoephedrine pills. Walker specifically testified that defendant informed her that he tried to buy the pills, but failed to do so because his identification was expired. When the police questioned Spencer and Walker, both confessed that they knew the pseudoephedrine pills would be used to make methamphetamine.
>
> While certainly circumstantial, when considered in the light most favorable to the prosecution, a rational jury could have found beyond a reasonable doubt that defendant intended to buy pseudoephedrine pills, he took action to buy pseudoephedrine pills, and at least had a reason to know the pills would be used to make methamphetamine. Furthermore, a reasonable jury could have found that evidence of defendant's alleged innocent behavior was not credible. Defendant claimed that he was trying to buy bug bite medication for his son and failed to do so because his identification expired. Yet, a pharmacy technician testified that the bug bite medication does not require identification before being purchased. As we have repeatedly stated, "this Court scrupulously leave[s] questions of credibility to the trier of fact to resolve[.]" Therefore, defendant has failed to establish that he was denied his due process right to be convicted based on sufficient evidence.

*People v. Hawkins*, Case No. 311476, Opinion at 3 (Mich. Ct. App., Mar. 12, 2013) (citations omitted).

Likewise, sufficient evidence was presented at trial from which a reasonable juror could infer that Petitioner participated in a conspiracy to possess pseudoephedrine. As the Michigan Court of Appeals concluded:

> Viewed in a light most favorable to the prosecution, there was sufficient evidence of conspiracy to possess a chemical that defendant knew or had reason to know would be used to manufacture a controlled substance. Walker testified that she, defendant, and Spencer agreed to go to Plainwell so that defendant and Spencer could buy pseudoephedrine pills. Walker was to be paid to drive, and she understood that defendant and Spencer planned to sell the pills. Walker also explained that defendant tried to buy the pills, but was unsuccessful. When viewed in a light most favorable to the prosecution, this evidence was sufficient for a rational jury to find beyond a reasonable doubt that defendant had the specific intent to combine with Spencer and Walker to purchase pseudoephedrine pills, which he knew or had reason to know would be used to manufacture methamphetamine.

*People v. Hawkins*, Case No. 311476, Opinion at 4 (Mich. Ct. App., Mar. 12, 2013) (citations omitted).

In light of the above authority and facts, the Court concludes that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## **CONCLUSION**

For the reasons articulated herein, the undersigned concludes that Petitioner is not

13

being confined in violation of the laws, Constitution, or treaties of the United States. Accordingly, the undersigned recommends that Hawkins' petition for writ of habeas corpus be **denied**. The undersigned further recommends that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: February 9, 2017

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge